## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GREGORY LEE,

$\qquad$ Plaintiff,

v. $\qquad$ ACTION NO. 2:16cv61

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

$\qquad$ Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Gregory Lee brought this action, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act.

An order of reference assigned this matter to the undersigned. ECF No. 8. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, it is hereby recommended that Lee's motion for summary judgment (ECF No. 13) be GRANTED, that the Commissioner's motion for summary judgment (ECF No. 15) be DENIED, and that the Commissioner's decision on Lee's claim be VACATED and REMANDED for further review.

# I. **PROCEDURAL BACKGROUND**

Plaintiff, Gregory Lee, protectively filed an application for a period of disability and DIB on November 5, 2014, R. 12, 167–71[1], alleging he became disabled on August 6, 2014 due to major depressive disorder, obesity, degenerative joint disease in his right knee and left ankle, insomnia, cardiomyopathy, high blood pressure, and high cholesterol.  R. 45, 152, 191.  The Commissioner denied Lee's application on December 16, 2014, and, upon reconsideration, on March 20, 2015.  R. 67–71, 85–87.  At Lee's request, an Administrative Law Judge ("ALJ") heard the matter on September 10, 2015, and at that hearing received testimony from Lee (who was represented by counsel) and an impartial vocational expert ("VE").  R. 21–44.  On October 7, 2015, the ALJ denied Lee's claim, finding that he was not disabled from August 6, 2014 through the date of the decision.  R. 12–20.

On December 17, 2015, the Appeals Council denied Lee's request for review of the ALJ's decision. R. 1–4, 6–7.  Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review.  *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.  Having exhausted all administrative remedies, Lee filed a complaint with this Court on February 10, 2016.  ECF No. 1.  The Commissioner answered on April 15, 2016. ECF No. 6.  In response to the Court's order, the parties filed motions for summary judgment, with supporting memoranda, on June 7 and July 7, 2016, respectively.  ECF Nos. 13–14, 15–16. Lee also filed a reply to the Commissioner's briefing.  ECF No. 17.  As neither party has indicated special circumstances requiring oral argument, the case is deemed submitted for a decision.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

## II. RELEVANT FACTUAL BACKGROUND

### A.    *Background Information and Hearing Testimony*

On appeal, Gregory Lee does not contest the ALJ's assessment of the impairments discussed below.  Therefore, aside from the facts pertaining to Lee's depression, the Court will not address them at length in this opinion.  Instead, Lee challenges the ALJ's alleged failure to weigh the Department of Veterans Affairs' ("VA") determination that he is totally disabled and entitled to individual unemployability due to his inability to secure or follow a substantial, gainful occupation due to his service-connected disability for major depressive disorder.  R. 159–66.

Gregory Lee was born in 1965 and was 49 years old on August 6, 2014, the alleged onset date of disability.  R. 167.  Lee possesses a bachelor's degree in business administration.  R. 25, 192.  Following a 20-year career, Lee retired from the U.S. Navy in 2003, where he worked as a data analyst.  R. 28, 50, 192.  More recently, and prior to August 2014, Lee worked as a sales/floor supervisor at a Navy Exchange, as a sales associate for various retailers, and as a driver of a mobile advertising truck.  R. 26–28, 199–202.

At the September 10, 2015 hearing before the ALJ, Lee testified that he suffered from the following problems:  depression; tendinitis in his left elbow; stiffness in his right knee stemming from degenerative joint disease; obesity;[2] and insomnia.[3]  Lee identified depression, and its resulting impact on his ability to interact with others, as his chief problem.  R. 30.  He testified that he finds the negativity of others "overwhelming," that their meanness depresses him, and that he does not trust people anymore.  R. 30–31.  As a result, and to cope with his inability to

---

[2] At the time of the hearing, Lee reported that he weighed 318 pounds, but had recently lost 22 pounds after pursuing a daily regimen of walking.  R. 38.

[3] Lee's application for DIB also identified, and the ALJ's ruling addressed, Lee's cardiomyopathy and left ankle pain.  R. 14–15, 152–53, 162.

change such matters, he stays to himself and avoids contact with other persons (aside from his wife and daughter) because he gets easily frustrated and fears that he might react badly, possibly by getting physical with or engaging in violence against those who treat him or his co-workers poorly. R. 30–32, 35–36.

According to Lee, his depression affects his ability to work. For example, Lee testified that, after 15 months of working as a sales and floor supervisor in the electronics department at the Navy Exchange, he quit in August 2014, when he became so stressed out and frustrated that he "just . . . couldn't do it anymore." R. 26–27. As another example, Lee testified that he previously was terminated by H.H. Gregg, where he worked as a sales associate, due to a verbal altercation in which he defended another employee from bullying by a co-worker. R. 27, 40.

Lee described a typical day of the week as follows. He reported waking, after sleeping three to four hours a night, getting himself cleaned up, engaging in household chores such as vacuuming, shopping, and doing the dishes and laundry, going walking at a local mall, and engaging in yard work as often as two times per week, all while trying to keep himself busy until his wife gets home from work. R. 28–29. Lee testified that he drives a car three to four times per week, but tends not to socialize with others and schedules activities outside the home at times when he is able to minimize his contact with people. R. 25, 30. Lee reported that he is able to stand approximately six to eight hours, with some sitting, or three to four hours, without sitting. R. 37. He further advised that the tendinitis in his left elbow is aggravated by lifting items, which results in a burning pain. R. 31. With respect to his right knee, Lee testified that he has mobility problems after lengthy periods of physical activity or sitting, but eventually regains mobility. R. 31, 36.

Although Lee testified (and the record reflects) that he takes medications for insomnia, high blood pressure, and high cholesterol, he takes nothing for depression. With respect to treatment for the latter problem, Lee reported that he participates in the VA's "Move-It Program," but did not describe what this treatment entails.[4] R. 29–31. In providing details of his depression to a disability adjudicator on December 3, 2014, Lee reported that he was not then receiving treatment for the condition. R. 47. He further advised that his doctor once attempted to write him a script for Zoloft, but that he does not like medications, particularly "mind-altering" ones, so he "handles it himself."[5] R. 47.

After the initial denial of his benefits application and prior to the reconsideration of that decision, Lee received a consultative examination on March 17, 2015 from Peter Birk, M.D. R. 277–79. During this examination, Lee recited why he left his position at the Navy Exchange in August 2014 and reported a history of major depression, for which he was hospitalized in 2000. R. 277. Upon his discharge from the hospital, Lee received a prescription for Zoloft and another unnamed psychotropic medication, both of which Lee denied taking at the time of Dr. Birk's examination. R. 277. Lee reported having suicidal thoughts, but denied ever engaging in suicidal acts. R. 277. In the course of conducting a full examination of Lee, including a neurological and mental status review, Dr. Birk noted that Lee's "credibility, understanding, and cooperation are good." R. 277–79. The neurological examination revealed that Lee's deep tendon reflexes and his "[c]ranial nerves, motor and sensory exams [were] intact." R. 278. The

---

[4] At the time of the hearing on September 10, 2015, Lee reported attending three treatment sessions (apparently as part of a group) in the preceding two months. R. 29.

[5] A November 5, 2014, disability report, however, reports that Lee attended "meetings" at the VA for depression beginning in September 2014 and continuing on December 18, 2014. R. 190, 195. Notwithstanding this, a disability adjudicator noted on March 19, 2015, that Lee communicated to her that he "has not had [mental health treatment] in over 10 years [and] is not taking [mental health] medications." R. 57.

examination of Lee's mental status revealed that his "orientation, affect, thought, content, memory[,] and general fund of information [were] good." R. 279. Dr. Birk's concluding impression stated: "49-year-old black male with psychiatric diagnosis, not on medication . . . has stress dealing with management." R. 279.

In conjunction with Lee's requested reconsideration of the initial denial of disability benefits, Richard Luck, PhD., a psychological consultant for the Commissioner, reviewed Lee's case and used the psychiatric review technique. R. 58–60. Noting the absence of mental health treatment records, including any pertaining to Lee's hospitalization in 2000, as well as the significant activities of daily living apparently performed by Lee, Dr. Luck concluded on March 19, 2015, that, notwithstanding the existence of a VA "rating for depression, there is no mental [medically determined impairment] or indication of [mental health] symptoms causing significant work limitations in the medical evidence on file." R. 59.

Finally, Robert Edwards, a vocational expert, testified that there were jobs in the national economy for a 50-year-old man, with a bachelor's degree and work experience like Lee's, who was capable of medium exertion and needed to avoid contact with the general public. R. 42. Such jobs included working as a janitor, a laundry worker, a sandwich maker, a clerical checker, and a mail clerk. R. 42. If the hypothetical individual also experienced frequent decreases in concentration and attention and, as a result, was off task for more than 15% of the day, there would be no jobs available for him in the national economy. R. 43.

**B.     *The VA's Disability Ratings and Determination of Individual Unemployability***

The record before the ALJ also contained an October 28, 2014 letter from the VA to Lee concerning a separate claim for benefits from the VA. R. 159–66. In this letter, the VA advised that: (1) Lee was entitled to benefits, effective January 14, 2013, for total disability, individual

unemployability ("TDIU") because of his inability "to secure or follow a substantially gainful occupation as a result of service connected disabilities;"[6] (2) Lee was entitled to dependents' education assistance, effective January 14, 2013, stemming from his total and permanent disability, as evidenced by his TDIU entitlement; and (3) his prior service-connected disability ratings of 70% for major depressive disorder, 10% for degenerative joint disease (right knee), 10% for a left elbow bone spur, and 10% for a left ankle sprain, were continued at the same disability rating levels.[7]  R. 161–64.

### III.  THE ALJ's DECISION

To evaluate Lee's claim of disability[8], the ALJ followed the sequential five-step analysis set forth in the SSA's regulations for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).  Specifically, the ALJ considered whether Lee:  (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; (4) had an impairment that prevents him from performing any past relevant work; and (5) had an impairment that prevents him from engaging in any substantial gainful employment.  R. 12–20.

---

[6] According to the letter, the VA received Lee's application for increased compensation, based on individual unemployability, on August 5, 2014.  R. 164.

[7] According to the letter, the VA first assigned to Lee a 70% disability rating for major depressive disorder on October 4, 2013.  R. 162.

[8] To qualify for DIB, an individual must meet the insured status requirements of the Social Security Act, be under age 65, file an application, and be under a "disability" as defined in the Act.  "Disability" is defined, for the purpose of obtaining disability benefits, "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); *accord* 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A).  To meet this definition, the claimant must have a "severe impairment" making it impossible to do previous work or any other substantial gainful activity that exists in the national economy.  20 C.F.R. § 404.1505(a).

The ALJ found that Lee met the insured requirements[9] of the Social Security Act through December 31, 2019, and he had not engaged in substantial gainful activity since August 6, 2014, his alleged onset date of disability.  R. 14.

At steps two and three, the ALJ found that Lee's depressive disorder, obesity, and mild degenerative disease of the left ankle constituted severe impairments which significantly limited his ability to perform basic work tasks, but that they neither singly nor or in combination (along with Lee's other conditions) met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for a finding of disability at step three.  R. 14–17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  The ALJ determined that Lee's remaining impairments (cardiomyopathy, degenerative joint disease of the right knee, left elbow bone spur, high blood pressure, and high cholesterol) were non-severe because they either responded to medication or failed to significantly limit Lee's activities of daily living or did not require significant medical treatment.  R. 14–15.

The ALJ next found that Lee possessed a residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), but without direct, occasional interaction with the general public.  R. 17–19.  At step four of the analysis, the ALJ determined that Lee was unable to perform any past relevant work because that work, as a supervisor or salesman or as a data analyst, required occasional and direct interaction with the public.  R. 19.

Finally, at step five, and after considering Lee's age, education, work experience, and RFC, the ALJ found that other jobs (such as a janitor, laundry worker, sandwich maker, clerical checker, and mail clerk) existed in significant numbers in the national economy that Lee could perform.  R. 19–20.  Accordingly, the ALJ concluded that Lee was not under a disability from

---

[9] In order to qualify for DIB, an individual must also establish a disability that commenced on or before the last day in which that individual met the insured status requirements of the Social Security Act.  *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131(b).

August 6, 2014 through the date of the ALJ's decision and was ineligible for a period of disability or DIB benefits.  R. 20.

## IV.  STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence.  42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  It consists of "more than a mere scintilla of evidence[,] but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner.  *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)."  *Craig*, 76 F.3d at 589 (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).  Thus, reversing the denial of benefits is appropriate only if either (A) the record is

devoid of substantial evidence supporting the ALJ's determination, or (B) the ALJ made an error of law.  *Coffman,* 829 F.2d at 517.

## V.  ANALYSIS

### A.      *The ALJ erred in failing to address the VA's determination regarding Lee's individual unemployability.*

Lee argues on appeal that the ALJ erred in failing to consider the VA's October 28, 2014 determination that he was entitled to compensation due to total disability based upon individual unemployability.   R. 161.   This inaction, Lee argues, not only violated SSA's regulation requiring consideration of evidence of disability decisions made by other government agencies, *see* 20 C.F.R. § 404.1512(b)(v), but also Fourth Circuit precedent dictating that substantial weight be given to VA disability ratings, unless the record clearly demonstrates the propriety of an ALJ's decision to accord the same lesser weight, *see Bird v. Comm'r of Soc. Sec.,* 699 F.3d 337, 343 (4th Cir. 2012).   Pl. Br. in Supp. of Summ. J. ("Pl. Br."), ECF No. 14 at 4–6.   In response, the Commissioner argues that, because the ALJ considered the underlying predicate for the VA's determination, namely, Lee's 70% disability rating for major depressive disorder, he need not have separately weighed the VA's determination of Lee's total disability based on individual unemployability.   Def. Mem. in Supp. of Summ. J. and in Opp. to Pl. Mot. For Summ. J. ("Def. Mem."), ECF No. 16 at 2.   For the reasons set forth below, the Court finds that, due to the distinct differences between a VA disability rating and a finding of individual unemployability due to inability to secure or follow a substantially gainful occupation, the ALJ erred in failing to consider the latter when ruling upon Lee's claim for disability benefits.

### 1.      *Assigning Weight to VA Disability Determinations*

Before addressing the substance of the ALJ's handling of the VA's determinations about Lee, it bears noting that SSA's regulations address what constitutes "evidence" subject to

consideration in disability determinations. *See* 20 C.F.R. § 404.1512 (entitled "Evidence"). Listed among the kinds of evidence to be considered by the Commissioner are "[d]ecisions by any governmental agency . . . about whether or not you are disabled . . . ." 20 C.F.R. § 404.1512(b)(v). It is undisputed that the VA is an agency that makes disability determinations concerning veterans who are able to establish service-connected disabilities. *See* 38 U.S.C. § 1131 (specifying the payment of compensation to veterans with service-connected disabilities).

In the *Bird* decision, the Fourth Circuit addressed the weight to be given to VA disability ratings in the context of social security disability cases. 699 F.3d at 343–44. The court noted that, previously and consistent with the regulation noted above, it had ruled that a state administrative agency's disability determination was "entitled to consideration in an SSA disability proceeding." *Id.* at 343 (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 n.1 (4th Cir. 1983)). The court also noted that SSA regulations specify that, although evidence of another agency's disability decision will be accepted, such a decision does not bind the SSA, which must follow the dictates of the Social Security Act and its implementing regulations. *Id.* (citing 20 C.F.R. §§ 404.1504, 404.1512(b)(5)). While recognizing that different circuit courts of appeal have assigned varying degrees of evidentiary weight to VA's disability determinations, the court determined that the "assignment of at least some weight to a VA disability determination reflects the fact that both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* (citation omitted). Due to the similarity in the programs' purposes and the methodologies used to evaluate a claimant's ability to work, the court found that a disability determination by one of the agencies was "highly relevant" to the other's evaluation of any claimed disability. *Id.* Accordingly, the court ruled "that, in making a disability determination, the SSA must give

substantial weight to a VA disability rating." *Id.*  In recognition of the unique standards used by the SSA to evaluate a claimed disability, however, the court qualified this rule by specifying that an ALJ may attribute "less weight to a VA disability rating when the record . . . clearly demonstrates that such a deviation is appropriate." *Id.*

2.      **The Nature of a VA Disability Rating and a Determination of Total Disability Individual Unemployability**

To assess the significance of a VA determination in the context of a social security case requires some background regarding two of the kinds of VA ratings and compensation determinations for "service-connected" disabilities.  *See* 38 C.F.R. § 3.303 (discussing general principles applicable to determining service connection for a disability).   One kind of VA compensation determination involves a disability rating.  *See* 38 U.S.C. § 1155 (directing the adoption and application of a schedule of ratings of reductions in earning capacity).  Once the VA has determined that a particular disease or disorder is service connected, it then assigns a disability rating (ranging from 0 to 100% in increments of 10%) based on a diagnostic code assigned to a particular impairment and its severity.  *See, e.g.,* 38 C.F.R. §§ 4.1 (discussing ratings schedule), 4.27 (discussing diagnostic codes), 4.71a (listing the schedule of ratings for disabilities affecting the musculoskeletal system).   A veteran with multiple impairments may receive a disability rating for each such impairment, which are then combined, using a table, for a single, combined total rating percentage.  38 C.F.R. § 4.25 (containing the combined ratings

table).  Importantly, the VA's schedule for rating disabilities is:

> primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. **The percentage ratings represent** as far as can practicably be determined **the average impairment in earning capacity resulting from such diseases and injuries** and their residual conditions **in civil occupations**. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability.

38 C.F.R. § 4.1 (emphasis added); *see Mitchell v. Shinseki,* 25 Vet. App. 32, 36 (2011) (noting that the "VA's rating schedule is constructed for the purpose of establishing levels of disability for compensation purposes based upon 'average impairment in earning capacity' resulting from particular injuries or diseases." (quoting 38 U.S.C. § 1155)).

As further explained in the regulations, while recognizing that the ability of each person to deal with a handicap resulting from a disability will differ, the VA's disability schedular rating "is based primarily upon . . . the economic or industrial handicap which must be overcome and not from the individual success in overcoming it."  38 C.F.R. § 4.15.  For that reason, a veteran who is employed, but who has a service-connected disability rating, may still be entitled to VA compensation benefits.  *See, e.g., Rutledge v. Illinois Dep't of Human Servs.*, 785 F.3d 258, 259 (7th Cir. 2015) ("A veteran is deemed totally disabled if he suffers from an impairment that would 'render it impossible for the *average* person to follow a substantially gainful occupation,' even if the veteran applying for benefits is able, through exceptional ability or exertion, to work full time." (quoting 38 C.F.R. § 4.15)); *McCleary v. Colvin*, No. 1:15cv172JEJGBC, 2016 WL 791581, at *32 (M.D. Pa. Mar. 1, 2016) ("Full[-]time employment does not necessarily contradict a 70% disability rating" by the VA) (citations omitted).

As its name suggests, a second kind of VA compensation decision -- a finding of total disability based upon individual unemployability ("TDIU") -- takes a different, more claimant-

focused approach.  The VA provides that, under certain circumstances, a veteran having one or more service-connected disability ratings may be entitled to compensation based upon individual unemployability.  The regulation governing such compensation is set forth at 38 C.F.R. § 4.16. It provides that the VA may assign a total disability rating to a veteran, whose singular or combined schedular rating is less than 100%, provided that two conditions are satisfied.  First, rather than focusing upon average impairment, the VA must determine whether the veteran at issue is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."  38 C.F.R. § 4.16(a).  Second, the veteran must have either a single disability rated at a minimum of 60% or greater, or two or more disabilities, one of which is "ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more."  *Id.*  Significantly, unlike the schedular ratings discussed above, which look to *average impairments associated with certain disabilities*, a TDIU determination not only requires the existence of certain minimum disability ratings, but also a finding by the VA that *a particular claimant cannot secure or maintain substantial gainful employment*.  *See Harris v. Colvin*, No. 1:15-370-RMG-SVH, 2016 WL 3535814, at *16 (D.S.C. June 9, 2016) (observing that "the VA's individual unemployability finding is based on an individualized assessment of the veteran's record"); *McCleary*, 2016 WL 791581, at *31 (noting that "'entitlement to TDIU is based on an individual's particular circumstance,'" rather than the average impairment resulting from a disability (quoting *Rice v. Shinseki*, 22 Vet. App. 447, 452 (2009)).

### 3.      The ALJ's Treatment of the VA Determinations

In the course of concluding that Lee was not disabled, the ALJ considered Lee's disability rating for major depressive disorder and for right knee, left elbow, and left ankle problems.  R. 14–15, 18.  Aside from noting that Lee was "now on disability retirement," R. 17,

however, the ALJ did not address the VA's TDIU determination and did not discuss how much weight, if any, to attach to this determination.  With respect to depression, the ALJ noted that Lee "received a 70% disability rating related to depressive disorder in October 2013," and that he reported a history of, and a prior hospitalization for, major depression.  R. 14.  In finding that Lee's major depressive order constituted a severe impairment, the ALJ also found that it resulted in symptoms such as "mood swings, paranoia, frustration, and isolating tendencies," and that these symptoms (coupled with those stemming from his obesity and left ankle problems) restricted his ability to work with others and "significantly limit[ed Lee]'s ability to perform basic work activities."  R. 15.  The ALJ also determined, however, that Lee's mental impairment failed to satisfy listing 12.04 because, among other things, he had no restriction in activities of daily living, only moderate difficulties in social functioning, only mild difficulties in concentration, persistence, and pace, and experienced no episodic decompensation.  R. 16.

In assessing Lee's residual functional capacity, the ALJ noted that there were "few records in evidence," including any records of medication or treatment for depression over the last ten years.  R. 19.  In any event, the ALJ noted Lee's prior possible psychiatric diagnosis stemming from his hospitalization in 2000 and the medication taken at that time.  R. 14, 18–19.  Further, the ALJ observed that Lee quit his job at the Navy Exchange due to "frustration with management" and began participating in the "Move It" program to deal with depression.  R. 17.  The ALJ also explicitly discussed the requirements of *Bird* and advised that he "considered the combination of the VA Ratings . . . particularly the 70% rating for depressive disorder" in assessing residual functional capacity.  R. 18.  Noting the absence of medication or treatment records for depression, Lee's apparent ability to work for a year and a half since reportedly receiving the 70% disability rating from the VA in January 2013, the VA's "acknowledge[ment]

of some improvement in [Lee's condition] in January 2013," and the record as a whole, the ALJ assigned "moderate weight" to the 70% disability rating. R. 18. Notwithstanding the conclusion of the disability determination service psychological consultant that Lee exhibited no documented psychological impairment and had no significant work limitations, and although the ALJ found Lee's testimony about the limiting effects of his symptoms not fully credible, the ALJ credited some of Lee's testimony about his depression, isolation, frustration, and difficulty in interacting with others. R. 16–18. To that end, the ALJ concluded that Lee had moderate limitations in social functioning and could not return to his prior relevant work because those positions "required occasional interaction with the . . . public." R. 19. Accordingly, the ALJ determined that Lee possessed the residual functional capacity to perform medium work, but without "direct occasional interaction with the general public." R. 17. After considering the testimony of the vocational expert, the ALJ determined that Lee was not disabled due to the existence of other work in the national economy that he could perform. R. 20.

### 4.    *Analysis*

In failing to consider the VA's TDIU determination, the ALJ committed a legal error and violated *Bird's* requirement to attribute substantial weight to VA disability determinations or provide cogent reasons for declining to do so. Although the ALJ considered each of Lee's individual disability ratings and focused upon the most serious of those ratings – Lee's 70% rating for major depressive disorder – he neglected to address the VA's TDIU determination and its individualized assessment that Lee was unable to secure or follow a course of substantial, gainful work due to that disability.

In her motion for summary judgment, the Commissioner tacitly concedes that the ALJ failed to consider the TDIU determination. The Commissioner argues, however, that because the

ALJ addressed the 70% disability rating that established the predicate for the VA's TDIU determination and found it wanting, he need not have separately analyzed the TDIU determination itself.  Def. Mem. at 7–9 ("[w]hen the ALJ has thoroughly reviewed [but not fully accepted] . . . the VA's disability ratings . . . , then the predicate by which the VA's IU determination was made is lost" and "[t]here is little practical reason for the ALJ to go further").  The Court disagrees.  The Commissioner would have the Court treat a 70% disability rating for depression as essentially equivalent to a TDIU determination.  Def. Mem. at 2 ("IU is a vocational designation under which the VA may pay an individual at a higher benefit rate, but only if the individual's disability ratings have been determined to be of a sufficiently high level").  But, as the discussion above establishes, the latter differs significantly from the former.  A 70% disability rating is based upon an assessment of average impairment associated with a particular disability, without regard to whether the veteran suffering from that service-connected disability is working or able to work.  TDIU, on the other hand, is based upon an individualized assessment of a veteran's ability to secure and follow substantial, gainful employment.  Stated another way, a TDIU finding differs from a disability rating in that it is a determination that the veteran in question is unable to work.  Although the ALJ discussed the VA's 70% disability rating, he nowhere discussed the VA's additional finding that Lee was unable to engage in and sustain substantial, gainful work.  *Bird*, however, teaches that such a determination is "highly relevant" and is ordinarily entitled to "substantial weight."  699 F.3d at 343.  Accordingly, the ALJ erred in failing to address the TDIU finding.

Moreover, the Commissioner's claim that the ALJ's attribution of only moderate weight to the VA's disability rating resolves the problem also misses the mark.  Notwithstanding the lack of any recent medical or other treatment records, the ALJ apparently found Lee's testimony

sufficiently compelling[10] to attribute moderate weight to the VA's 70% disability rating, thereby rejecting the psychological consultant's conclusion that Lee suffered from no mental health impairment and no symptoms imposing significant limitations on his ability to work.  R. 16–19, 58–60.  Although the Commissioner argues that this weighting necessarily obviated the need for the ALJ to address individual unemployability, this argument rests upon an unproven assumption, unsupported by legal authority, that "moderate" weight is akin to a disability rating percentage that is insufficient to trigger TDIU for Lee.  *See* 38 C.F.R. § 4.16(a) (requiring the existence of at least one single disability rating of 60% or greater or multiple disability ratings having a combined rating of 70% or more, along with at least one disability rating of 40% or more).  The Court, however, knows of no reason why the ALJ's moderate weighting could not be equated with a 60% or 50% disability rating, for example, for major depressive disorder, such that Lee might still qualify as totally disabled due to individual unemployability pursuant to 38 C.F.R. § 4.16(a).  Stated another way, the ALJ's analysis does not serve to remove the significance of, or the need to address, the VA's assessment of Lee's individual unemployability.

Finally, the ALJ's explication of the reasons for attributing only moderate weight to the 70% disability rating is deficient in other ways.  Leaving aside his reference to the lack of recent medical records and his reference to the "record as a whole," the ALJ also attributed less than substantial weight to the 70% rating because:  (1) the VA "acknowledged some improvement [in Lee's depressive disorder] in January 2013;" and (2) Lee worked for a year and half after receiving that rating from the VA in January 2013.  R. 18.  With respect to the first reason, the record contains no evidence that the VA noted an improvement in Lee's depression in January 2013.  Instead, the improvement noted in the VA's October 28, 2014 benefits letter pertained to

---

[10] The ALJ found that Lee's "medically determined impairments could reasonably be expected to cause [his] symptoms," but that his statements about the persistence, intensity, and limiting effects resulting therefrom were "not fully credible."  R. 17.

Lee's right knee, left elbow, and left ankle.  R. 162–63 (noting three times that "current evidence demonstrates some improvement in your condition").  The second reason, although factually accurate, creates a misimpression not supported by the underlying facts.  As noted in the VA's letter, the VA first assigned a 70% disability rating to Lee's depressive disorder on October 4, 2013.  R. 162.  On August 5, 2014, the VA received Lee's application for increased compensation based on unemployability.  R. 164.  The VA granted that application on October 28, 2014.  R. 159, 161–62.  In doing so, the VA backdated the award to January 14, 2013, based apparently, among other reasons, on a form completed by one of Lee's prior employers.  R. 161– 62.  A closer examination of the facts, therefore, reveals that the VA first determined Lee to be totally disabled and individually unemployable on October 28, 2014, after he left employment with the Navy Exchange in August 2014, and that Lee remained unemployed from August 2014 through the date of the September 10, 2015 hearing before the ALJ.  Therefore, the fact that the VA's TDIU determination followed soon after the alleged onset date of disability of August 6, 2014, highlights the significance of the ALJ's failure to consider the same.

**B.     The ALJ's legal error was not harmless.**

Alternatively, the Commissioner argues that, even if the ALJ erred, the Court should apply the harmless error doctrine.  Def. Mem. at 10–12.  An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant.  *See, e.g., Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (finding harmless error when it was "highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability"); *cf. Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the

agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (internal citations and quotation marks omitted).   On the other hand, "[a] procedural error is not made harmless simply because the aggrieved party appears to have had little chance of success on the merits anyway."   *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546 (6th Cir. 2004) (quotations omitted).

On the basis of the record, the Court is unable to conclude that the ALJ's conclusions are supported by substantial evidence sufficient to obviate the error discussed above for the following reasons.  First, the ALJ failed to consider the VA's highly relevant determination that Lee was totally disabled and unemployable due to his inability to secure and maintain gainful work, as commanded by *Bird.*   Second, the task of reviewing the evidence of record and attributing substantial weight to the VA's determination, unless cogent reasons exist for doing otherwise, resides, in the first instance, with the ALJ.   *See Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir. 1984) (noting that a reviewing court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence."); *DeLoatche,* 715 F.2d at 150 ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision"); *cf. Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011) (remanding to the ALJ where new evidence presented to the Appeals Council had not been assessed by the fact finder and reconciled with other conflicting evidence in the record and reduced to findings sufficient to permit consideration of whether substantial evidence supported the Commissioner's decision).   The Court declines to speculate about how the ALJ might conduct this task and whether the ALJ might determine that the VA's TDIU determination is distinctly different from the SSA's disability determination, as suggested by the

Commissioner.  Def. Mem. at 11.  Third, for the reasons noted above, the ALJ's discussion of Lee's disability rating for depression did not cure the failure to address Lee's TDIU.  Fourth, to the extent that the ALJ's analysis of Lee's disability rating was premised upon erroneous facts and analysis, as discussed above, its attribution of moderate weight to same is called into question.  Fifth, remand will permit development of the record and consideration of any evidence pertaining to the rationale supporting the VA's TDIU determination.  Accordingly, and although the Court expresses no opinion about whether Lee is, in fact, disabled under the Social Security Act, the Court cannot conclude that the ALJ's error was harmless.

## VI.  RECOMMENDATION

For the foregoing reasons, this Court recommends that plaintiff's motion for summary judgment (ECF No. 13) be GRANTED, defendant's motion for summary judgment (ECF No. 15) be DENIED, and the decision of the Commissioner be VACATED AND REMANDED for further consideration.

## VII.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. §  636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules.  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.

2.  A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____<br>
Robert J. Krask<br>
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia<br>
November 29, 2016